

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00691-CV

**IN THE INTEREST OF J.D.J.** Jr. and D.R.J., Children

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-01185
Honorable Michael E. Mery, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  March 18, 2015

AFFIRMED

J.D.J. appeals the trial court's order terminating his parental rights to his children J.D.J. Jr.

and D.R.J.  In his only issue, J.D.J. asserts the evidence was neither legally nor factually sufficient

for the trial court to find by clear and convincing evidence that terminating his parental rights was

in his children's best interests.  We conclude the evidence is both legally and factually sufficient;

we affirm the trial court's order.

### BACKGROUND

In May 2013, the Department of Family and Protective Services received information from

an anonymous call to the San Antonio Police Department alleging neglect of nineteen-month old

J.D.J. Jr. and five-month old D.R.J.  Upon investigating, the Department found the parents were

homeless and unemployed, the children were dirty and in need of food and clothing.  The older

child had possible sunburn, and had blisters and abrasions on his feet. The younger child had apparent difficulty breathing, but the parents had not filled a prescription for the child's upper respiratory infection because they had been too busy. The mother stated she was rationing food to the children because they sold all their food stamps so the father could buy alcohol. The Department subsequently petitioned to remove J.D.J.'s children from him and their mother M.M. The trial court granted the petition, issued a protective order, and the children were removed from J.D.J. and M.M. After several permanency hearings and a bench trial on the merits, the trial court terminated J.D.J.'s parental rights to his children based on subparagraphs (D), (E), and (O) of Family Code section 161.001(1), *see* TEX. FAM. CODE ANN. § 161.001(1) (West 2014), and because it was in the children's best interests, *see id.* § 161.001(2).[1]

## STANDARD OF REVIEW

An order terminating parental rights must be supported by clear and convincing evidence that (1) the parent has committed one of the grounds for involuntary termination as listed in section 161.001(1) of the Family Code, and (2) terminating the parent's rights is in the best interest of the child. *Id.* § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002).

### A.     Legal Sufficiency

When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005). If the court "determines [a] reasonable factfinder could form a firm belief or conviction that the matter that

---

[1] The trial court also terminated M.M.'s parental rights to her children, but she did not appeal the trial court's order.

must be proven is true," the evidence is legally sufficient. *See In re J.L.*, 163 S.W.3d at 85; *In re J.F.C.*, 96 S.W.3d at 266.

**B.     Factual Sufficiency**

Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *accord In re K.R.M.*, 147 S.W.3d 628, 630 (Tex. App.—San Antonio 2004, no pet.).  We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re C.H.*, 89 S.W.3d at 25.

## GROUNDS FOR TERMINATION OF PARENTAL RIGHTS

J.D.J. does not challenge the trial court's findings that he committed three of the statutory grounds for involuntary termination of his parental rights.  *See* TEX. FAM. CODE ANN. § 161.001(1); *In re J.F.C.*, 96 S.W.3d at 261.  Instead, he contends the evidence was neither legally nor factually sufficient for the court to find by clear and convincing evidence that terminating his parental rights was in his children's best interests.  *See* TEX. FAM. CODE ANN. § 161.001(2); *In re J.F.C.*, 96 S.W.3d at 261.

## BEST INTERESTS OF THE CHILDREN

A trial court may terminate a parent's rights to a child if it finds, inter alia, such "termination is in the best interest of the child."  TEX. FAM. CODE ANN. § 161.001(2); *accord In re J.F.C.*, 96 S.W.3d at 261.

**A.     *Holley* Factors**

The factors a court uses to ascertain the best interest of the child may include the following:

(B)    the emotional and physical needs of the child now and in the future;
(C)    the emotional and physical danger to the child now and in the future;

(D)   the parental abilities of the individuals seeking custody;

. . .

(G)   the stability of the home or proposed placement;

(H)   the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I)   any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *accord In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012) (reciting the *Holley* factors).

**B.   *Holley* Factors Evidence**

Applying the applicable standards of review for sufficiency of the evidence, we examine all the evidence, *see In re J.F.C.*, 96 S.W.3d at 266; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005) (crediting or disregarding evidence), and recite below that which especially pertains to the *Holley* factors, *see Holley*, 544 S.W.2d at 371–72. At trial, J.D.J. and the Department examined several witnesses and the court heard from the children's attorney ad litem.

*1.   M.M., Mother*

M.M. testified as follows. She and J.D.J. do not have jobs. They do not have any kind of support system in San Antonio. They have been living on the street for more than one year, and they do not have a secure and stable place to live. She is still afraid of J.D.J. because, in past incidents, he pulled a knife on her, or threatened to kill her, or sent her a letter saying "I hate you." She is afraid J.D.J. or his friends will kill her and the children.

*2.   Jennifer Hillin, Caseworker*

Jennifer Hillin, the Department caseworker from June 2013 to July 2014, testified to the following. She tried repeatedly to get J.D.J. to secure safe housing for M.M. and the children but J.D.J. refused to do so. She was also concerned about domestic violence by J.D.J. because of M.M.'s outcries. M.M. described past incidents where J.D.J. had hit her, or attempted to choke

her, or held a knife to her throat, or waived a gun in her face. M.M. also told her J.D.J. threatened to kill her and the children.

When she questioned J.D.J. about M.M.'s outcries, he either evaded the questions, or minimized or denied the allegations. J.D.J. did not complete the anger management or domestic violence prevention classes she made available to him. He failed to secure stable and safe housing for the children and failed to obtain stable employment. During supervised visits, when the children left the room for extended periods of time, J.D.J. did not notice. J.D.J. also failed to respond when the children needed to be fed or have their diapers changed. Although he had weekly visits with the children, J.D.J.'s interactions with the children did not improve.

### 3. *Selene Mendez, Caseworker*

Selene Mendez, J.D.J.'s current Department caseworker, testified as follows. Since she was assigned as the caseworker in July 2014, J.D.J. has "not done anything to change the situation from whe[n] the children were removed." J.D.J. has not met the children's most basic needs such as food and safe and stable housing. His disability applications have been denied four times, but he is not looking for work. She believes that if the children were returned to J.D.J., they would be in physical danger.

She noted the children are well-adjusted in their foster home. The foster home provides a two-parent, safe, stable environment for the children, and the foster parents have demonstrated their ability to provide for them. The children have bonded with their foster parents, and the foster parents want to adopt the children.

### 4. *Linda O'Reilly, CASA Volunteer*

Linda O'Reilly, a CASA Volunteer, testified to the following. She worked on J.D.J.'s case since it began in May 2013. She has not seen J.D.J. make any effort to provide stable housing or a safe environment for the children. She is fearful that if the children are returned to J.D.J., they

will have no routine or stability in their lives. Given her observations and interactions with J.D.J. and the family for more than one year, she does not believe J.D.J. will change.

She has observed the children in their foster home, and they are thriving. She recommends J.D.J.'s parental rights be terminated.

### 5.     *J.D.J., Father*

J.D.J. testified that he loves his children and he wants them back. He insisted "They never starved. We always had [them] fed." He admitted he wrote M.M. a letter saying "I hate you," but only because M.M. was staying with a person he believed to be "a child molester." He denied that he ever (1) hit or choked M.M., (2) held a knife to her throat, or (3) threatened her with a gun. He admitted he and M.M. slept outside an abandoned church the night before trial, and that for the last twelve months, he has not had a stable home in which to live. He insisted he had recently applied for "about 40 jobs" but no one would call him back because he was applying for disability benefits. He asked the court for more time so he could arrange to provide for the children's needs.

### 6.     *Laura Duran, Attorney Ad Litem for Children*

As the attorney ad litem for the children, Laura Duran advised the court that she has seen the children's lack of bonding with J.D.J. and their "extremely bonded" relationship with their foster parents. She noted J.D.J. has not improved in providing a safe home for his children, and she opined that terminating J.D.J.'s parental rights would be in the children's best interests.

## C.     Children's Best Interests Finding

Here, the trial court was the sole judge of the weight and credibility of the evidence including the testimony of each witness. *See City of Keller*, 168 S.W.3d at 819; *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

The trial court could have believed the testimony that, for more than one year, J.D.J. has been unemployed, has lived on the street, and has not made any improvements in his employment

or housing despite the Department's and others' repeated efforts to help him do so. *See Holley*, 544 S.W.2d at 372 (factors (B), (C), (H), (I)). It could have believed the witnesses' testimony, despite J.D.J.'s testimony to the contrary, that J.D.J. repeatedly committed acts of domestic violence against M.M., threatened the children, failed to complete anger management or domestic violence prevention courses, and the children would be in danger if placed back with him. *See id.* (factors (B), (C), (H)). It could have believed J.D.J. failed to give appropriate attention and care to the children during his visits with them, and that they have not bonded with him. *See id.* (factors (B), (C), (H)).

The trial court could also have believed the testimony that the foster parents provided safe, stable housing for the children, they demonstrated their ability to provide for the children, the children were thriving in their care, the children were extremely bonded to their foster parents, and the foster parents want to adopt the children. *See id.* (factors (B), (C), (D), (G)).

Reviewing the evidence under the two sufficiency standards, we conclude the trial court could have formed a firm belief or conviction that terminating J.D.J.'s parental rights to his children was in the children's best interests. *See In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d at 25). Therefore, the evidence is legally and factually sufficient to support the trial court's order. *See id.*

## CONCLUSION

The trial court found J.D.J. committed three statutory grounds supporting terminating his parental rights, and terminating J.D.J.'s parental rights was in the children's best interests. J.D.J. appealed only the latter finding.

Having reviewed the evidence, we conclude it was legally and factually sufficient to support the trial court's finding by clear and convincing evidence that termination of J.D.J.'s parental rights to J.D.J. Jr. and D.R.J. was in the children's best interests.

We affirm the trial court's order.

Patricia O. Alvarez, Justice